AUG 5 2026 PM2:16
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

Yuliya Glazman,

    *Plaintiff,*

    v.                              Case No. *8:26-cv-2265-WFJ-SPF*

Citigroup, Inc., and Citibank, N.A.,

    *Defendants.*

## COMPLAINT AND JURY DEMAND

## NATURE OF THE ACTION

1.    Plaintiff Yuliya Glazman brings this action against Defendants Citigroup, Inc. and Çitibank, N.A. pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3); and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102. This action arises from Defendants' response to a sexual harassment dispute Plaintiff asserted against Defendants in Glazman v. Citigroup, Inc. and Citibank, N.A., Case No. 8:26-cv-01522-TPB-AEP (M.D. Fla.) (the "First Action"). After Plaintiff filed the First Action alleging, among other claims, a hostile work environment because of sex, Defendants



tendered a separation agreement conditioning separation pay on Plaintiff's execution of a representation that no proceedings had been filed; recruited Plaintiff for an open internal position, interviewed her, and selected a male candidate without further communication to Plaintiff; tendered a revised separation agreement identifying the First Action by case number and conditioning payment on entry of a court order dismissing the First Action with prejudice; and declined to respond to or select Plaintiff for any of the eleven positions for which she submitted twelve applications following her separation, including after written inquiry transmitted to Defendants' Human Resources function by certified mail. Each claim in this action concerns adverse actions occurring on or after March 16, 2026, the date Plaintiff filed the First Action.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964 and the Fair Labor Standards Act.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as that claim arises from the same nucleus of operative facts as Plaintiff's federal claims.

2

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claims in this action occurred in this district. Plaintiff was employed at Defendants' Tampa-based operations through May 7, 2026. The employment actions at issue in this action, including the tender of separation instruments, the internal recruitment and non-selection, and the disposition of Plaintiff's post-separation applications, concern positions and personnel functions administered in connection with Defendants' operations in this district. The First Action is pending in the Tampa Division of this district.

## ELECTION PURSUANT TO 9 U.S.C. §§ 401–402

5.      This action arises from Defendants' response to the sexual harassment dispute Plaintiff asserted in the First Action. That dispute concerns recurring sex-differentiated working conditions that Plaintiff alleges constituted a hostile work environment because of sex, as set forth in Section A of the Factual Allegations. After Plaintiff asserted and continued prosecuting that dispute in federal court and before the Equal Employment Opportunity Commission, Defendants subjected Plaintiff to the post-filing adverse actions pleaded in this Complaint. This case therefore relates to a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4): each claim in this action arises

3

from Defendants' conduct following, and because of, Plaintiff's assertion of conduct alleged to constitute sexual harassment under applicable Federal and State law. Plaintiff is the person alleging conduct constituting the sexual harassment dispute, and that conduct is set forth in Section A of the Factual Allegations and in the First Action. Each dispute and claim in this action arose and accrued after March 3, 2022. Without conceding the existence, validity, scope, delegation, enforceability of, or Plaintiff's assent to, any pre-dispute arbitration agreement or pre-dispute joint-action waiver, Plaintiff elects pursuant to 9 U.S.C. § 402(a) that no pre-dispute arbitration agreement or pre-dispute joint-action waiver shall be valid or enforceable with respect to this case. The applicability of Chapter 4 of Title 9 of the United States Code, and the validity and enforceability of any agreement to which that Chapter applies, are determined by this Court pursuant to 9 U.S.C. § 402(b).

## PARTIES

6.    Plaintiff Yuliya Glazman is a female individual and a resident of Lake County, Florida. Plaintiff was employed by Defendants at Defendants' Tampa-based operations through May 7, 2026.

7.    Defendant Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York. Defendant Citigroup, Inc.

4

employs more than 500 employees. At all relevant times, Defendant Citigroup, Inc. employed Plaintiff at Defendants' Tampa facility in this district.

8.    Defendant Citibank, N.A. is a national banking association and a wholly-owned subsidiary of Defendant Citigroup, Inc. Defendant Citibank, N.A. maintains operations within this district, including at its Tampa facility. Defendant Citibank, N.A. employs more than 500 employees. At all relevant times, Defendant Citibank, N.A. employed Plaintiff at Defendants' Tampa facility in this district.

9.    At all relevant times, Defendant Citigroup, Inc. wholly owned Defendant Citibank, N.A. Defendants administered Plaintiff's compensation, benefits, payroll, and Human Resources functions through common platforms and common personnel. Defendants maintained a common Talent Acquisition function through which the positions identified in this Complaint were posted and through which Plaintiff's applications were received. The personnel who took the employment actions challenged in this action acted on behalf of Defendants. The operations of Defendants with respect to the functions at issue in this action were integrated in management, labor relations, personnel policy, payroll, benefits, and Human Resources administration.

5

## FACTUAL ALLEGATIONS

### A.    The Sexual Harassment Dispute to Which This Action Relates

10.    Plaintiff was employed by Defendants for more than fifteen cumulative years. At all times relevant to this Section, Plaintiff was the sole female member of a five-person team within Defendants' Program Management – Business Execution organization, holding the same job family classification and C-level designation as her four male colleagues.

11.    Throughout the relevant period, Plaintiff was compensated below the published median for her classification while her male colleagues in the same classification were compensated at or above the median.

12.    On September 27, 2024, Plaintiff sent a written communication to her direct supervisor requesting a review of her compensation, identifying that Defendants' published compensation data showed her salary was below the median for her classification. Plaintiff's direct supervisor and that supervisor's manager each acknowledged the disparity in writing and stated that it needed to be corrected. Defendants' Human Resources department declined to conduct a compensation review, and the disparity was not corrected through the 2024 or 2025 year-end compensation processes.

6

13.     Beginning in the fourth quarter of 2024, Defendants transferred primary responsibility for the team's headcount-approval process to a newly hired male employee, and designated a separate male backup employee — not Plaintiff — to provide coverage for him. Defendants nonetheless repeatedly directed Plaintiff to serve as backup to, and corrective resource for, the male employee: on January 29, 2025, Plaintiff's direct supervisor directed Plaintiff in writing to serve as the male employee's backup notwithstanding the designated backup, stating that the designated backup "seems unsure of the process still" and directing Plaintiff to "lead and guide" him; on March 14, 2025, the supervisor and the male employee directed Plaintiff to investigate headcount matters and run the headcount-approval process as lead; and on September 30, 2025, Plaintiff was again directed to serve as the male employee's backup. On each occasion Plaintiff identified and corrected errors in the male employee's work product, reconciling data from multiple source systems and issuing written corrections to senior leaders. The corrective work displaced Plaintiff's own core responsibilities and was performed without any adjustment to Plaintiff's compensation. Neither the designated male backup nor any of

7

Plaintiff's male colleagues was subjected to comparable recurring corrective assignments.

14.    In early 2026, Defendants reduced Plaintiff's work-from-home privileges and required Plaintiff to report in person to Defendants' Tampa office two days per week. On March 4, 2026, Defendants notified Plaintiff that her position was being eliminated effective May 7, 2026, while Plaintiff's male colleagues on the same team, in the same job family classification and C-level designation, were retained. On March 6, 2026, Defendants terminated Plaintiff's access to Defendants' digital systems, including email, internal platforms, and the internal job application portal, although Plaintiff's formal employment continued through May 7, 2026.

15.    Plaintiff alleges in the First Action that the recurring sex-differentiated working conditions described in this Section constituted a hostile work environment because of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

16.    Plaintiff seeks no duplicative recovery in this action for conduct occurring before March 16, 2026. The allegations of this Section are pleaded as operative facts identifying the sexual harassment dispute to which Defendants'

8

post-March 16, 2026 conduct relates. Plaintiff's claims in this action concern only adverse actions occurring on or after March 16, 2026.

**B.    The Protected Activity**

17.    On March 16, 2026, Plaintiff filed the First Action against Defendant Citigroup, Inc., asserting the sexual harassment dispute described in Section A, including a claim for hostile work environment because of sex under Title VII, together with claims for sex-based pay discrimination under Title VII and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and retaliation. Plaintiff's operative pleading in the First Action names Defendant Citibank, N.A. as a co-defendant.

18.    On April 2, 2026, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against Defendants, cross-filed with the Florida Commission on Human Relations, presenting the allegations of the First Action, including the sex-based hostile work environment allegations.

19.    The filing and prosecution of the First Action and the filing of the April 2, 2026 charge each constitute protected activity under 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 215(a)(3), and Fla. Stat. § 448.102.

**C.    Plaintiff's Employment Status and Defendants' Knowledge**

9

20. Plaintiff's employment with Defendants continued through May 7, 2026.

21. Defendants were served with process in the First Action on March 19, 2026. Defendants appeared through litigation counsel in the First Action on April 8, 2026. From the date of service, Defendants had knowledge of the First Action, including its hostile work environment allegations.

**D.    The April 7, 2026 Separation Agreement**

22. On April 7, 2026, Defendants delivered a Separation Agreement and General Release to Plaintiff. At the time Defendants delivered the agreement, the First Action was pending, Defendants had been served with process in the First Action nineteen days earlier, and Plaintiff's April 2, 2026 charge had been filed.

23. Paragraph 7(b) of the Separation Agreement required Plaintiff to represent and warrant that she had not filed, directly or indirectly, nor caused to be filed, any legal proceeding against Defendants in any state or federal court or in arbitration, or any administrative proceeding with any agency having jurisdiction over claims of employment discrimination.

24. The representation required by Paragraph 7(b) was inaccurate when Defendants delivered the agreement. The First Action had been pending since March 16, 2026. Plaintiff's charge had been filed on April 2, 2026.

25. The Separation Agreement conditioned Plaintiff's receipt of separation pay on Plaintiff's execution of the agreement, including the representation in Paragraph 7(b). Execution of the agreement required Plaintiff to attest to a representation that was inaccurate. If Plaintiff did not execute the agreement, Defendants would not pay the separation pay described in the agreement.

**E.     The Internal Recruitment, Interview, and Non-Selection**

26. After Plaintiff filed the First Action, and while Plaintiff remained employed by Defendants, Defendants' personnel recruited Plaintiff for an open internal position. Plaintiff did not solicit this recruitment.

27. On April 23, 2026, Defendants interviewed Plaintiff for the internal position. At the conclusion of the interview, Defendants' personnel advised Plaintiff that she would receive follow-up within approximately one week.

11

28.    Defendants did not provide the stated follow-up within the stated timeframe. Plaintiff sent a follow-up communication. Defendants did not respond.

29.    Defendants selected a male candidate for the position. This employment decision was made before Plaintiff's formal separation date of May 7, 2026, while Plaintiff remained an employee of Defendants.

30.    At the time of the employment decision, Defendants had institutional knowledge of the First Action, including its hostile work environment allegations, through their litigation counsel, who had appeared on April 8, 2026.

31.    Plaintiff was qualified for the internal position. Defendants' personnel identified Plaintiff for the position and initiated the recruitment.

F.    **The May 11, 2026 Revised Separation Agreement**

32.    On May 11, 2026, six days after moving on May 5, 2026 to compel arbitration of the First Action, Defendants tendered a revised Separation Agreement. Paragraph 5(a) of the revised agreement included the claims asserted in the First Action, identified by case number, within the scope of Plaintiff's release.

12

33. Paragraph 7(b) of the revised agreement required Plaintiff to acknowledge that she would dismiss the First Action with prejudice and release all claims asserted in it, including the sexual harassment allegations, in exchange for the consideration provided in the agreement.

34. Paragraph 17(a)(ii) of the revised agreement conditioned Defendants' payment obligation on Defendants' receipt of an order from the court reflecting that the First Action had been dismissed with prejudice.

35. Paragraph 16 of the revised agreement provided that disputes concerning the validity, interpretation, or enforcement of the agreement would be resolved through binding arbitration. Paragraph 18 provided that Defendants, as prevailing party, would be entitled to attorneys' fees and expenses incurred in connection with enforcing Defendants' rights under that paragraph. The revised agreement contained no reciprocal fee-recovery provision for Plaintiff in Paragraph 18.

36. Plaintiff did not execute either the original or the revised Separation Agreement.

## G.     Plaintiff's Post-Separation Applications

37.     Following the conclusion of her employment on May 7, 2026, Plaintiff applied for open positions with Defendants for which she was qualified. Plaintiff's applications were submitted through Defendants' online application system.

38.     Between May 23, 2026 and June 1, 2026, Plaintiff submitted twelve applications for eleven open positions, as follows:

a.     Senior Business Data Analyst — AVP, Job ID 291248321, applied May 23, 2026;

b.     Vice President Middle Office Trade Service Manager, Job ID 291487493, applied May 23, 2026;

c.     Transaction Manager, Job ID 12532596, applied May 23, 2026;

d.     Operations Core Project Lead Analyst, Job ID 12533751, applied May 23, 2026;

e.     Sr Business Associate, Job ID 292402011, applied May 23, 2026;

f.     Prime Finance Delta One Middle Office Analyst (Hybrid), Job ID 292008677, applied May 30, 2026;

g.     Operations Core Project Lead Analyst, Job ID 12533751, renewed

application for the position identified in item d, submitted May 30, 2026;

h.    Fin Solutions Lead Analyst, Job ID 291981603, applied May 30, 2026;

i.    Business Analytics Sr Analyst, AVP, Job ID 26940600, applied June 1, 2026;

j.    Sr Business Associate, Job ID 26959790, applied June 1, 2026;

k.    Data Quality Lead Analyst Vice President, Job ID 26958094, applied June 1, 2026;

l.    Fin Solutions Lead Analyst, Job ID 26960904, applied June 1, 2026.

39.    Each position for which Plaintiff applied was within Plaintiff's experience and qualifications. Plaintiff had more than fifteen years of cumulative service with Defendants. In April 2026, Defendants' own personnel recruited Plaintiff, unsolicited, for an open internal position.

40.    As to certain of the positions, Defendants notified Plaintiff that her candidacy would not proceed. As to the remaining positions, Defendants have provided no substantive response to Plaintiff's applications.

**H.    The June 3, 2026 Certified Letter and Defendants' Non-Response**

41.    On June 3, 2026, Plaintiff transmitted a written request for application status updates to Citibank, N.A., Human Resources — Talent Acquisition, by certified mail, return receipt requested.

15

42. The June 3, 2026 letter identified each of the twelve applications listed in Paragraph 38 by position title, Job ID, and application date. The letter stated Plaintiff's continued interest in returning to employment with Defendants, requested the status of each application, and stated Plaintiff's availability for interviews.

43. Defendants received the June 3, 2026 letter.

44. On June 3, 2026, Plaintiff advised Defendants' litigation counsel in writing that the letter had been transmitted. Defendants accordingly had knowledge of Plaintiff's pending applications through their Human Resources function and through their litigation counsel.

45. As of the date of this Complaint, Defendants have not responded to the June 3, 2026 letter.

46. As of the date of this Complaint, Defendants have not selected Plaintiff for any of the eleven positions, have not scheduled an interview for any of the eleven positions, and have not communicated the status of Plaintiff's candidacy for any position for which no rejection issued.

47. On information and belief, Defendants have filled, or are proceeding to fill, one or more of the positions with candidates other than Plaintiff.

## I.    Administrative Predicates

48.    On May 14, 2026, Plaintiff filed a second charge of discrimination with the Equal Employment Opportunity Commission against Defendants, cross-filed with the Florida Commission on Human Relations, EEOC Charge No. 511-2026-02539. The charge alleges retaliation and discrimination in connection with the conduct described in Sections D, E, and F of these Factual Allegations, and asserts theories under Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1967, and the Florida Civil Rights Act of 1992.

49.    The Equal Employment Opportunity Commission issued a Notice of Right to Sue on Charge No. 511-2026-02539 on May 20, 2026. Plaintiff received the Notice on May 20, 2026.

50.    The conduct described in Sections G and H of these Factual Allegations occurred after the filing of Charge No. 511-2026-02539 and constitutes retaliation for the protected activity identified in that charge and in Section B of these Factual Allegations. The claims arising from that conduct grow out of, and are reasonably related to, the allegations of Charge No. 511-2026-02539.

17

## COUNT I

### RETALIATION FOR ASSERTING AND PROSECUTING A SEXUAL HARASSMENT DISPUTE
*(Title VII, 42 U.S.C. § 2000e-3(a))*

51.    Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, and I of the Factual Allegations, as if fully set forth herein.

52.    Plaintiff engaged in protected activity under 42 U.S.C. § 2000e-3(a) by filing and prosecuting the First Action's claim that Defendants subjected her to a hostile work environment because of sex, and by presenting the related allegations, including the sex-based hostile work environment allegations, to the Equal Employment Opportunity Commission in the April 2, 2026 and May 14, 2026 charges.

53.    Following Plaintiff's protected activity, Defendants took materially adverse actions against Plaintiff, including: tendering the May 11, 2026 revised Separation Agreement, which identified the First Action by case number, required Plaintiff to acknowledge dismissal of the First Action with prejudice, and conditioned payment on entry of a court order dismissing the First Action with prejudice, as described in Section F; tendering the April 7, 2026 Separation

Agreement conditioning separation pay on execution of the inaccurate representation described in Section D; recruiting Plaintiff for an internal position, interviewing her, providing no follow-up, and selecting a male candidate, as described in Section E; and declining to respond to, interview Plaintiff for, or select Plaintiff for any of the positions described in Sections G and H.

54.    Each action described in the preceding paragraph would dissuade a reasonable employee or former employee from making or supporting a charge of discrimination.

55.    Defendants had knowledge of Plaintiff's protected activity at the time of each adverse action. Defendants were served with process in the First Action on March 19, 2026, nineteen days before tendering the April 7, 2026 Separation Agreement, and Defendants' litigation counsel appeared in the First Action on April 8, 2026. The May 11, 2026 revised agreement identifies the First Action by case number on its face. Plaintiff's June 3, 2026 letter and the contemporaneous written notice to Defendants' litigation counsel provided Defendants with direct knowledge of Plaintiff's pending applications.

56.    A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions. The April 7, 2026 agreement was tendered 22 days after the First Action was filed. The May 11, 2026 agreement was tendered six days after Defendants moved to compel arbitration of the First Action, names the First Action by case number, and conditions payment on its dismissal with prejudice. Defendants' non-response to twelve applications from a fifteen-year former employee whom Defendants' own personnel had recruited weeks earlier coincided with the pendency of the First Action and Plaintiff's charges.

57.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost compensation, lost employment and employment benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT II

### SEX DISCRIMINATION — FAILURE TO HIRE
*(Title VII, 42 U.S.C. § 2000e-2(a)(1))*

58.    Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, E, and I of the Factual Allegations, as if fully set forth herein.

20

59. Plaintiff is female.

60. Plaintiff applied for and was considered for the internal position described in Section E. Defendants' personnel recruited Plaintiff for the position and interviewed her on April 23, 2026.

61. Plaintiff was qualified for the position.

62. Defendants did not select Plaintiff for the position. Defendants selected a male candidate.

63. Defendants' selection of a male candidate over Plaintiff constitutes discrimination against Plaintiff with respect to hiring and the terms, conditions, or privileges of employment because of Plaintiff's sex.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost compensation, lost employment and employment benefits, emotional distress, loss of professional standing, and other economic and non-economic damages.

## COUNT III

### RETALIATION
*(Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))*

65. Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§

21

401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, and I of the Factual Allegations, as if fully set forth herein.

66.    The First Action asserts claims under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), a provision of the Fair Labor Standards Act. The filing of the First Action constitutes the institution of a proceeding under or related to the Fair Labor Standards Act and is protected activity under 29 U.S.C. § 215(a)(3).

67.    Following Plaintiff's protected activity, Defendants took the adverse actions described in Sections D, E, F, G, and H of the Factual Allegations. Each is an adverse action within the meaning of 29 U.S.C. § 215(a)(3).

68.    A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions, as described in Count I.

69.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost compensation, lost employment and employment benefits, and other damages, and is entitled to legal and equitable relief pursuant to 29 U.S.C. § 216(b), including liquidated damages.

## COUNT IV

### RETALIATION
*(Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102(3))*

70.    Plaintiff incorporates by reference the allegations of the preceding Nature of the Action, Jurisdiction and Venue, Election Pursuant to 9 U.S.C. §§ 401–402, and Parties sections, and Sections A, B, C, D, E, F, G, H, and I of the Factual Allegations, as if fully set forth herein.

71.    Plaintiff objected to, and refused to participate in, activities, policies, and practices of Defendants in violation of laws, rules, and regulations, including Defendants' sex-based compensation and selection practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Defendants' retaliatory practices in violation of 42 U.S.C. § 2000e-3(a) and 29 U.S.C. § 215(a)(3). Plaintiff's objections and refusals include the filing and prosecution of the First Action, the filing of charges of discrimination, and Plaintiff's refusal to execute the April 7, 2026 Separation Agreement conditioning separation pay on the inaccurate representation described in Section D.

72.    Following Plaintiff's protected conduct, Defendants took retaliatory personnel actions against Plaintiff, including the actions described in Sections D, E, F, G, and H of the Factual Allegations.

23

73.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost compensation, lost employment and employment benefits, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

A.     Back pay and lost benefits, with prejudgment interest, arising from Defendants' non-selection of Plaintiff for the internal position described in Section E and for positions described in Sections G and H as to which Defendants declined or failed to advance Plaintiff's candidacy;

B.     Instatement of Plaintiff into the internal position described in Section E or a substantially equivalent position, or front pay in lieu of instatement;

C.     Compensatory damages for emotional distress, loss of professional standing, and other non-economic harm pursuant to 42 U.S.C. § 1981a;

D.     Punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

E.     Liquidated damages pursuant to 29 U.S.C. § 216(b);

F. A permanent injunction requiring Defendants to consider Plaintiff's pending and future applications for employment without regard to Plaintiff's protected activity, and to respond to Plaintiff's applications in accordance with the procedures applied to applicants generally;

G. Costs of this action;

H. Prejudgment and post judgment interest as permitted by law; and

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 5, 2026

Respectfully submitted,

Yuliya Glazman
Plaintiff, pro se
2110 Thousand Trails Blvd
Clermont, FL 34714
(407) 794-6503
yglazman@protonmail.com

25