**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**YULIYA GLAZMAN,**

**Plaintiff,**

**v.** **Case No. 8:26-CV-02265-TPB-SPF**

**CITIGROUP, INC., and**
**CITIBANK, N.A.**

**Defendants.**

---

**DEFENDANTS, CITIGROUP, INC.'S AND CITIBANK, N.A.'S, MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Defendants, Citigroup, Inc.[1] and Citibank, N.A., (hereinafter, collectively "Citi") by and through their undersigned counsel and pursuant to 9 U.S.C. §§ 3-4, move the Court to compel arbitration and stay this action. In support of this Motion, Citi states as follows:

## INTRODUCTION

Plaintiff is bound by a valid and enforceable agreement, which requires her to submit all covered employment disputes she has to binding arbitration administered by AAA. This Court already ruled that her arbitration agreement is valid and enforceable and more importantly, that her argument that the Ending

---

[1] Plaintiff is employed only by Citibank, N.A. and has incorrectly filed suit against Citigroup, Inc.

Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA") precludes arbitration of her claims was not valid. First Action, Doc. 54 (the "August 5, 2026 Order"). This Court held that Plaintiff's alleged, self-titled claim of "hostile work environment based on sex" in her first lawsuit, did not plausibly assert facts supporting a claim of sexual harassment and as such, the agreement could not be invalidated by EFAA. *Id.* at p. 7.

On the same day that this Court issued its Order compelling arbitration in her First Action,[2] *See* First Action, August 5, 2026 Order. Plaintiff filed this second lawsuit, repackaging the same failed EFAA argument by relying on her claims of alleged hostile work environment and labeling her claim as: "Retaliation for Asserting and Prosecuting a Sexual Harassment Dispute." The present Complaint does not allege a sexual-harassment dispute; it alleges only retaliation for filing the first lawsuit and related protected activity (all of which Court has already held did not plausibly state a sexual harassment claim). Plaintiff again erroneously invokes EFAA to avoid having to arbitrate the present retaliation claims.

The Court should end Plaintiff's duplicative effort and circumvention of the Court's Order by staying this case and ordering Plaintiff to arbitrate her claims, as she agreed to do during her employment. Defendants also request the Court impose sanctions against Plaintiff for forcing Citi to relitigate an issue the Court

[2] Plaintiff's two lawsuits currently pending before this Court are detailed below on pages 3-4.

already decided. *See* First Action, August 5, 2026 Order, p. 7. Plaintiff's filing of her second lawsuit, rather than a demand for arbitration, is frivolous, vexatious, and now requires the Court and Defendants to spend time and resources addressing a settled issue.

## PROCEDURAL BACKGROUND

### I. The First Action

After learning of her position elimination, but before her termination, Plaintiff filed an EEOC charge and later, on March 16, 2026, filed a lawsuit, *see Glazman v. Citigroup, Inc.*, No. 8:26-cv-1522-TPB-AEP (M.D. Fla. 2026) (the "First Action"), alleging disparate treatment and unequal pay based on gender and age, as well as claims of retaliation relating to her requests for a compensation review under the Equal Pay Act ("EPA"), Title VII, the Age Discrimination in Employment Act ("ADEA"), the Florida Civil Rights Act ("FCRA"), and the Florida Private Whistleblower Act. Plaintiff also included a count, which she titled "Hostile Work Environment Based on Sex." *Id.*, Doc. 1 ("Complaint"), Count I.

Plaintiff amended her complaint on April 23, 2026 to add Citibank, N.A. as a co-defendant and additional allegations concerning her disparate treatment and unequal pay claims. *Id.*, Doc. 22 ("Amended Complaint"). She retained the "Hostile Work Environment Based on Sex" count and asserted that her claims were exempt from arbitration under EFAA, stating that she "elects pursuant to 9

U.S.C. § 402(a) that no pre-dispute arbitration agreement and no pre-dispute joint-action waiver shall be valid or enforceable with respect to this case or the claims asserted in this action." *Id.*, First Action ¶¶5, Count I. Citi moved to compel arbitration on May 5, 2026, arguing that Plaintiff did not plausibly state a claim for sexual harassment and that her lawsuit was not exempt from arbitration under the EFAA. *Id.*, Doc. 29 ("Defendant's Motion to Compel"). The Court granted Citi's Motion to Compel on August 5, 2026, finding that the EFAA did not exempt the case from arbitration and ordering the Parties to arbitration in accordance with the terms of their arbitration agreement. First Action, August 5, 2026 Order. On August 7, 2026, Plaintiff made an arbitration demand to Citi in relation to the First Action. Plaintiff's demand has been submitted to and is pending before AAA.

## II. The Instant Lawsuit

Plaintiff filed this instant second lawsuit on the same day the Court compelled arbitration in the First Action, alleging gender discrimination and retaliation based on the denial of a position for which she was allegedly recruited and interviewed, along with several other job applications she submitted to Citi but did not receive responses to, and asserting a count of "Retaliation for Asserting and Prosecuting a Sexual Harassment Dispute." *See* Doc. 1 ("Plaintiff's Complaint"), Section A, Count I. Plaintiff again invoked the EFAA, raising the same failed preclusion argument despite the Court's ruling in the First Action. Her

new Complaint contains no factual allegations concerning a sexual harassment dispute and focuses exclusively on Citi's alleged failure to hire her for a new position after her position was eliminated.

Plaintiff filed the Instant Lawsuit knowing her claims belong in arbitration. Plaintiff understands that the EFAA was designed to protect victims of sexual harassment and sexual assault from forced arbitration and that she is neither. Yet Plaintiff seeks to relitigate the same argument in another lawsuit, with no additional facts to suggest she can plausibly assert a sexual harassment claim. She may not like this Court's August 5, 2026 Order in the First Action but that is the Court's ruling. Plaintiff's sanctionable conduct has caused the Court and Citi to expend time and resources to address a settled issue.

This Court does not have jurisdiction over this dispute and, accordingly, should stay this lawsuit, order that the case be submitted to arbitration under Plaintiff's contractual agreement, and order sanctions against Plaintiff for asserting yet another frivolous EFAA preclusion argument.

## FACTUAL BACKGROUND

### I. Plaintiff's Employment History

Plaintiff was employed by Citibank, N.A. until May 7, 2026. Complaint[3], ¶6. During her employment, Plaintiff questioned her compensation. Complaint ¶12,

[3] "Complaint" refers to the Instant Lawsuit.

On March 4, 2026, Citi notified Plaintiff her position would be eliminated effective May 7, 2026. Complaint, ¶14.

## II. The Arbitration Agreement

On July 3, 2025, Plaintiff acknowledged receipt of the 2025 U.S. Citi Handbook. In pertinent part, Plaintiff's "2025 U.S. Employee Handbook Acknowledgment" ("Acknowledgement"), states:

> **I UNDERSTAND THAT BY ACKNOWLEDGING RECEIPT OF THE 2025 U.S. HANDBOOK AND THE EMPLOYMENT ARBITRATION POLICY, I AM WAIVING ANY RIGHT I MAY HAVE UNDER THE LAW TO BRING EMPLOYMENT-RELATED DISPUTES, WHETHER INITIATED BY ME OR BY CITI, IN FEDERAL OR STATE COURT, OR TO HAVE ANY EMPLOYMENT-RELATED DISPUTE HEARD BY A JURY.** I UNDERSTAND THAT THIS WAIVER OF RIGHTS COVERS ALL TYPES OF EMPLOYMENT- RELATED DISPUTES AS DESCRIBED IN THE ARBITRATION POLICY. I UNDERSTAND THAT I WILL INSTEAD BE REQUIRED TO SUBMIT ALL SUCH EMPLOYMENT-RELATED DISPUTES FOR FINAL AND BINDING DECISION BY AN ARBITRATOR.
>
> **WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, AND IS A BINDING CONTRACT REQUIRING ME TO ARBITRATE ALL EMPLOYMENT- RELATED DISPUTES**, I UNDERSTAND THAT NOTHING CONTAINED IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT. . .

Exhibit 1, Declaration of Sandrina Wilson, ¶¶5-6 ("Wilson Dec.") (emphasis added).

Plaintiff also acknowledged in writing that she was obliged to carefully review the Handbook and that she agreed to submit to arbitration in the event of an employment-related dispute, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.** I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of my or Citi's right to compel arbitration of employment-related disputes.

Wilson Decl., ¶6, Ex. B (emphasis added)

"The Employment Arbitration Policy," Appendix A (the "Arbitration Policy"), is governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA"). Relevant here, the "Scope of Policy" establishes:

> **This Employment Arbitration Policy applies to both [Plaintiff] and to Citi, and makes arbitration the required and exclusive forum for the resolution of all covered employment-related disputes (i.e., other than disputes which are expressly excluded from this Policy as described below) between you and Citi** (including Citi's predecessors, successors and assigns, its current, former, and future parents, subsidiaries and affiliates and its and their current, former, and future officers, directors, employees and agents). However, this Policy doesn't create a legal claim where one does not otherwise exist under law. **Therefore, by acknowledging receipt of this Policy and/or continuing your employment with Citi after this Policy is distributed, you are accepting the Policy and waiving any legal right you may have to bring your employment-related disputes in court and/or to have your disputes heard by a jury.**

Wilson Decl. ¶4 ("Ex. A") (emphasis added).

The Arbitration Policy, agreed to by Plaintiff with proper consideration,[4] outlines the type of "disputes" subject to the Policy, as follows:

> Subject to the remainder of this Section, these disputes include, without limitation, claims, demands or actions under **Title VII of the Civil Rights Act of 1964 ("Title VII")**, the Civil Rights Acts of 1866 and 1991, **the Age Discrimination in Employment Act of 1967**, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, **the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963,** the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, **and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment**, compensation, breach of contract, defamation, or retaliation, or any claims arising under or related to the Citigroup Separation Pay Plan.

Wilson Decl., ¶4, Ex. A (emphasis added).

## III. The First Action and EFAA Claims

Plaintiff filed her First Action against Citigroup, Inc. on March 16, 2026, while she was still employed, asserting various employment discrimination and retaliation claims that are expressly covered by Citibank N.A.'s Arbitration Policy. *See* First Action, Complaint. Plaintiff amended her complaint in her First Action ("First Action, Amended Complaint") on April 23, 2026, adding Citibank, N.A. as

[4] The Arbitration Policy states, "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation to you, as well as your acceptance of employment with Citi, or your continued employment with Citi after this Policy is distributed, shall constitute consideration for and assent to your obligations under this Policy." (Wilson Decl., Ex. A, p. 1)

a co-defendant; reasserting her employment discrimination and retaliation claims, and continuing to allege that her claims are exempt from arbitration under EFAA, 9 U.S.C. §§ 401-402. First Action, Amended Complaint [Doc. 22].

In both complaints, Plaintiff included a count she self-titled "Hostile Work Environment Based on Sex," wherein she alleges, in sum and substance, that she was the only woman in her team and that she received assignments that her male colleagues did not receive. The First Action Amended Complaint (and her original First Action Complaint) asserts claims focused exclusively on allegations of unequal pay and disparate working assignments based on gender. *See id.* Aside from conclusory legal allegations that the conduct she describes constituted sexual harassment, Plaintiff did not assert any factual allegations in her First Action Complaint or First Action Amended Complaint that could be construed, under any standard to be asserting a claim for sexual harassment or sexual assault based on her sex. *See id*.

Citi moved to compel arbitration in response to the First Action Complaint [Doc. 10) and First Action Amended Complaint [Doc. 29] on April 8, 2025 and May 5, 2026, respectively. Citi argued that Plaintiff's claims were all subject to Citibank N.A.'s Arbitration Policy, to which she agreed on July 3, 2025, and that her claims were not exempt from arbitration under the EFAA, as she did not plausibly allege that a sexual harassment or hostile work environment claim under Title VII.

## IV. The Court's Ruling in the First Action and Plaintiff's Instant Lawsuit.

The Court granted Citi's Motion to Compel Arbitration on August 5, 2026, compelling the Parties to arbitrate Plaintiff's claims and ordering the First Action to be administratively closed. First Action, August 5, 2026 Order [Doc. 54]. Plaintiff filed the Instant Lawsuit on the same day.[5] As she did in her First Action, in the Instant Lawsuit, Plaintiff "elects" to void the Arbitration Policy under the EFAA based on her conclusory assertion that the First Action pertains to a "sexual harassment dispute," stating:

> This action arises from Defendants' response to the sexual harassment dispute Plaintiff asserted in the First Action. That dispute concerns recurring sex-differentiated working conditions that Plaintiff alleges constituted a hostile work environment because of sex, as set forth in Section A of the Factual Allegations. After Plaintiff asserted and continued prosecuting that dispute in federal court and before the Equal Employment Opportunity Commission, Defendants subjected Plaintiff to the post-filing adverse actions pleaded in this Complaint. This case therefore relates to a sexual harassment dispute within the meaning of 9 U.S.C. § 401(4): each claim in this action arises from Defendants' conduct following, and because of, Plaintiff's assertion of conduct alleged to constitute sexual harassment under applicable Federal and State law. Plaintiff is the person alleging conduct constituting the sexual harassment dispute, and that conduct is set forth in Section A of the Factual Allegations and in the First Action. Each dispute

[5] Plaintiff also filed several frivolous motions in the First Action that same day seeking to amend the Court's Order, seeking reconsideration of the Court's ruling compelling arbitration, and seeking to certify a controlling question of law as to the correct analytical framework for analyzing EFAA preclusion (First Action, Docs. 55, 56, 57, 58, 59) while making an arbitration demand to Citi on August 7, 2026 in relation the First Action. Plaintiff contends that the Parties' arbitration agreement is unenforceable in the First Action and in the instant lawsuit while simultaneously initiating arbitration as to the First Action.

> and claim in this action arose and accrued after March 3, 2022. Without conceding the existence, validity, scope, delegation, enforceability of, or Plaintiff's assent to, any pre-dispute arbitration agreement or pre-dispute joint-action waiver, Plaintiff elects pursuant to 9 U.S.C. § 402(a) that no pre-dispute arbitration agreement or pre-dispute joint-action waiver shall be valid or enforceable with respect to this case.

Complaint ¶5.

Plaintiff pursues the same failed EFAA preclusion theory in the Instant Lawsuit that this Court thoroughly considered and rejected in the First Action. *See* First Action, August 5, 2026 Order, p. 7. Plaintiff did not plausibly allege that she was sexually harassed in the First Action nor does she in the Instant Lawsuit. Accordingly, the Court should find that the EFAA does not apply here and compel Plaintiff to arbitrate her claims per her existing arbitration agreement with Citi.

## ARGUMENT

### I. The EFAA Does Not Apply Because Plaintiff Has Not *Plausibly* Alleged She Was Retaliated Against *in Relation to a Sexual Harassment Dispute.*

As in the First Action Plaintiff filed, Plaintiff cannot "elect" to void her arbitration agreement in the Instant Lawsuit because the EFAA is inapplicable to her claims. Plaintiff has not pled any facts supporting her claim that she was retaliated against in relation to a sexual harassment or sexual assault dispute. The EFAA provides in pertinent part, that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, ... no predispute arbitration agreement ... shall be valid or enforceable with respect to a

case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Under the EFAA, a "sexual harassment dispute" is one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. § 401(4). The invoking party must plausibly allege conduct constituting a sexual harassment dispute pursuant to federal pleading standards. *See Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 U.S. Dist. LEXIS 151960, at *15 (M.D. Fla. Aug. 23, 2024) (plaintiff did not state a plausible claim of sexual harassment under the EFAA and recommending district court grant defendant's motion to compel arbitration"); *see Mitchell v. Raymond James & Assocs., Inc.*, No. 8:23-cv-2341-VMC-TGW, 2024 U.S. Dist. LEXIS 170856, at *6 (M.D. Fla. Sep. 23, 2024) (granting defendant's motion to compel arbitration).

Plaintiff has not pled any factual allegations constituting a sexual harassment dispute. In the First Action, Plaintiff sought exemption from arbitration by titling Cout I of her Amended Complaint "Hostile Work Environment Based on Sex." The Court held her title was not enough. *See* First Action, August 5, 2026 Order, at p. 7. In the Instant Lawsuit, Plaintiff tries to argue this Complaint is exempt from arbitration because she titled a count "Retaliation for Asserting and Prosecuting a Sexual Harassment Dispute" claim. The factual allegations in the Instant Lawsuit, just as those in the First Action, allege claims of

unequal pay and disparate treatment with respect to her assignments. Rather than relying on facts asserting a sexual harassment claim, she asserts in the Instant Lawsuit that she was retaliated against for filing the First Action, in which the Court already found she failed to plausibly assert a sexual harassment claim. A claim of retaliation for filing a lawsuit alleging disparate pay and job assignments is not a retaliation claim from asserting a sexual assault or sexual harassment. Her retaliation claims in the Instant Lawsuit must be arbitrated and cannot be invalidated by the EFAA.

As Citi already established and the Court has already ruled, to state a sexual harassment/hostile work environment claim under Title VII, a plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of direct or vicarious liability. *See Miller*, 277 F.3d at 1275; *Jones v. Spherion Atlantic Enterp., LLC*, 493 F. App'x 6, 9 (11th Cir. 2012). This legal analysis consists of both a subjective and an objective component to determine whether the conduct is "severe or pervasive." *See Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009). A hostile work environment exists only where the workplace is permeated with

discriminatory intimidation, ridicule and insult that is sufficiently pervasive or severe to alter the conditions of the victim's employment and create an abusive working environment. *See Benoit v. Ocwen Fin. Corp.*, 960 F. Supp. 287, 291 (S.D. Fla. 1997) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)).

Plaintiff's Complaint in the Instant Lawsuit does not contain any facts demonstrating any element of a sexual harassment claim in this Complaint or in the First Action. Aside from Plaintiff's self-serving titles of Count I, Section A of her Factual Allegations, and her conclusory assertions that "this action arises from Defendants' response to the sexual harassment dispute Plaintiff asserted in the First Action" (Plaintiff's Complaint, ¶¶1, 5, 16-17), Plaintiff does not allege any *facts* that she was *harassed* because of her sex by Defendants or that she was retaliated against in relation to conduct *constituting sexual harassment*. *Id.*; *see Benoit*, 960 F. Supp. 287, 291 (S.D. Fla. 1997) ("Here, no plaintiff pleads facts to show that she has suffered actionable sexual harassment or that she has been subjected to a legally cognizable hostile environment."). Instead, Plaintiff alleges that she was subjected to *pay discrimination* and disparate working conditions in the form of assignments that her male colleagues were not assigned, and that such allegations form the basis of her First Action. Complaint, Section A; *See White v. Atlanta Indep. Sch. Sys.*, No. 1:21-cv-02614-JPB-RGV, 2021 U.S. Dist. LEXIS 271175, at *15-16 (N.D.

Ga. Dec. 1, 2021) (noting the "important distinctions depending on whether a plaintiff is claiming disparate treatment or hostile work environment under Title VII" including that "a plaintiff claiming a hostile environment must identify offensive conduct based on sex that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment."); *Usai v. Club Mgmt. Mia. II LLC*, 801 F. Supp. 3d 1295, 1323 (S.D. Fla. 2025) (noting that "all sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff' work environment."). Although she claims that her compensation was lower than that of her male colleagues and that she was assigned certain tasks that her male colleagues were not assigned, she does not assert sex based treatment that was severe or pervasive to alter her working conditions other than in summary conclusions. *See* Complaint, Section A. Plaintiff also alleges that her position was ultimately eliminated and that she filed the First Action, wherein she alleges in conclusory terms that "the recurring sex-differentiated working conditions described in this Section constituted a hostile work environment because of sex under Title VII. . ." *Id.* at ¶¶14-15.

Even assuming her allegations in Section A and Count I of Plaintiff's Complaint are true, which of course, Citi denies, no reasonable person (or court)

could find the conduct supporting Plaintiff's retaliation claim to be based on sexual harassment, hostile work environment or a sexual assault. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1983) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond title VII's purview."). As in the First Action, Plaintiff has not alleged any facts constituting a sexual harassment dispute, let alone satisfied the objective threshold to show that a reasonable person would find the alleged actions hostile or abusive. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Although underlying harassment forming the basis for a retaliation claim may trigger the EFAA, the underlying conduct must still plausibly constitute a sexual harassment dispute under federal, state, or local law. *Compare* Complaint, Section A and, O*livieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (finding claims under Title VII and the NYSHRL for retaliation based on sexual harassment fell within the definition of a "sexual harassment dispute" under the EFAA, where the underlying harassment consisted of sexual propositions, comments, and touching). Simply labeling the nature of her First Action as a "sexual harassment dispute" does not make it so, as this Court found in its August 5, 2026 Order in the First Action. First Action, August 5, 2026 Order; *See Gonzalez v. Carnival Corp.*, 757 F. Supp. 3d 1314, 1321 (S.D. Fla. 2024) (rejecting the plaintiff's conclusory assertion

that her lawsuit "plainly relates to a sexual harassment dispute," noting the plaintiff "does not allege conduct that violates a law prohibiting sexual harassment."); *Cornelius v. CVS Pharmacy, Inc.*, 2023 WL 6876925, at *3 (D. N.J. October 18, 2023) ("use of 'sex harassment' did not suggest that the plaintiff's gender or 'sex-based' discrimination claims were automatically converted to sexual harassment claims"). In *Torres v. Pasco Cnty.*, No. 8:21-cv-892-TPB-JSS, 2022 U.S. Dist. LEXIS 186735, at *10 (M.D. Fla. Oct. 12, 2022), the Plaintiff alleged that a conversation with her by a male was "sexual" in nature simply because she was a female and the comment was by a male. She also linked complaints about her employment as being sexual in nature without any evidence that the statements or conduct at issue were related to her sex. The Court granted summary judgment for defendant on plaintiff's hostile work environment claim. The Judge stated:

> Plaintiff offers no evidence that suggests the employee's remarks implicated her gender in any way. In fact, reviewing the comments made by the employee, it is clear that Plaintiff's gender is not implicated whatsoever. The term "cat call" suggests an inappropriate sexual and gender-based type of comment. Plaintiff has chosen to label the statement at issue here as "cat calls," but her decision to use that label does not mean the statements were actually sexual or gender based. In fact, the three instances of "cat calls" identified by Plaintiff are not sexual in nature and do not support a sexual harassment claim. Plaintiff takes offense here simply because a male employee made statements to her that were not related to work. Under Plaintiff's view of the world, any statement unrelated to work made to another employee of a different gender would constitute unwelcome sexual harassment. No reasonable person (or jury) could find the conduct identified by Plaintiff here to be sexual,

> related in any way to gender, or sufficiently hostile, or abusive to support an employment discrimination claim.

*Id.* (internal citations omitted). This Court and many others have rejected arguments that allegations of sex-based disparate treatment amount to a hostile work environment. First Action, August 5, 2026 Order; *See Waiguchu v. Morgan Stanley & Co. LLC*, No. 1:25-cv-7443-GHW, 2026 LX 104001, at *31-32 (S.D.N.Y. Apr. 1, 2026) (granting defendant's motion to compel arbitration, where the plaintiff alleged she was subjected to differential treatment based on her gender and court found such allegations did not constitute sexual harassment conduct under the EFAA). This Court already held that EFAA did not apply to Plaintiff's claims in the First Action and should reach the same conclusion here with respect to her retaliation claim in the Instant Lawsuit.[6] *See* First Action, August 5, 2026 Order, at p. 7-9. The EFAA does not apply here. Respectfully, the Court should compel arbitration, consistent with the Parties' binding arbitration agreement, and stay this case pending arbitration.

## II. Federal Law Requires the Court to Enforce a Valid Arbitration Agreement.

The FAA governs arbitration agreements, including those contained in private employment contracts. *See* 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (the FAA governs arbitration clauses in employment contracts other than those for transportation workers); *see Martinez v. Symbotic,*

[6] Likewise, Plaintiff's EEOC charge is premised on the same allegations of disparate treatment.

*LLC*, No. 5:25-cv-706-WWB-PRL, 2026 LX 69782, at *4 (M.D. Fla. Mar. 4, 2026). The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, [] upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to dispel judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). The Supreme Court has also explained the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct. 1612, 1621, 200 L. Ed. 2d 889 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

Upon finding that a dispute is subject to a binding arbitration agreement, the FAA mandates courts to compel arbitration of the dispute. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.") (emphasis added); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (requiring courts to "rigorously enforce agreements to arbitrate"). This standard is readily met here, thereby requiring the Court to compel arbitration.

## III. The Court Should Enforce the Existing Valid Arbitration Agreement Entered into by the Parties.

In the Eleventh Circuit, courts consider the following three factors to determine whether to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate has been waived. *See Martinez*, 2026 LX 69782, at *5 (citing *Exceen v. Ramirez*, No. 8:24-cv-00880-WFJ-AEP, 2024 U.S. Dist. LEXIS 105027, 2024 WL 3327509, at *2 (M.D. Fla. June 13, 2024)). All three factors are met in this case.

### A. <u>Existence of a Valid Written Agreement to Arbitrate.</u>

Plaintiff agreed, in writing, to arbitrate employment-related disputes that may arise out of her employment with Defendant. "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019). Under the FAA, "a written arbitration agreement is 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. § 2). Courts must apply ordinary state-law principles that govern the formation of contracts when determining whether a valid agreement to arbitrate exists. *See Vaughan v. Athena Bitcoin, Inc.*, No. 25-25141-CV, 2026 LX 111157, at *5 (S.D. Fla. Mar. 24, 2026) (citing *Osterer v. Bam Trading Servs. Inc.*, 753 F. Supp. 3d 1289, 1294 (S.D. Fla. 2024)). A "district court may conclude as

a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.*

Citi and Plaintiff entered into a valid agreement to arbitrate. Wilson Decl., ¶¶5-6, Ex. B. The Arbitration Policy provides that it "applies to both [Plaintiff] and to Citi" and that it "makes arbitration the required and exclusive forum for the resolution of all employment-related disputes." *Id.* During Plaintiff's employment with Defendant Citibank, N.A., she acknowledged receipt of Defendant's 2025 U.S. Citi Handbook and agreed to submit to arbitration in the event of an employment-related dispute. *Id.* Plaintiff also acknowledged that she was obliged to carefully review the Handbook before agreeing to submit to arbitration, as stated below:

> **I understand that appended to this Handbook is an Employment Arbitration Policy that requires me and Citi to submit employment-related disputes to binding arbitration** (see Appendix A). **I understand that it's my obligation to read these documents carefully.**

*Id.* Plaintiff had the opportunity to carefully review the Arbitration Policy and agreed to it by continuing to work for Citi. Plaintiff received consideration in the form of continued employment with Defendant Citibank, N.A. as well as "eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation." Wilson Decl., Ex. A, p. 1. Therefore, the Arbitration Policy should be considered a valid and enforceable

arbitration agreement under Florida law, as there is no evidence of unconscionability[7] that would render the agreement void.

**B. Existence of an Arbitrable Issue.**

Every claim in Plaintiff's Complaint falls within the purview of the Arbitration Policy. In the Arbitration Policy, the parties agreed to binding arbitration for any and all claims arising under Title VII, the FLSA, and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, or retaliation. Wilson Decl., ¶4 Ex. A. All claims asserted in Plaintiff's Complaint pertain to her employment with Citi and, accordingly, fall under one of these categories and, accordingly, must be arbitrated.

**C. The Right to Arbitrate Has Not Been Waived.**

Defendants have not waived their right to arbitrate because they filed this Motion in lieu of an answer to Plaintiff's Complaint to *enforce* the Parties'

---

[7] "Florida courts apply the doctrine of unconscionability 'with great caution[.]'" *Lambert*, 2022 U.S. App. LEXIS 18787, at *13 (citing *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st Dist. Ct. App. 2003)). The doctrine is "not a mechanism that allows a party to 'avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous.'" *Id.* "The central question in the procedural unconscionability analysis is whether the complaining party lacked a meaningful choice when entering into the contract." *Id.* at *14. (citing *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 n.3 (Fla. 2014)). Here, Plaintiff did not lack meaningful choice as she was advised to carefully read the policy before signing her Handbook Acknowledgment. *See* Wilson Decl., ¶6, Ex. B. Ultimately, Plaintiff agreed to the policy and decided to move forward with her employment with Defendant. *Id.*

agreement to arbitration. *See KEY W. Jetski, Inc. v. Sayre-Scibona*, No. 4:25-CV-10067-LEIBOWITZ/AUGUSTIN-BIRCH, 2026 LX 96567, at *4 (S.D. Fla. Feb. 17, 2026) (considering whether the party seeking arbitration waived its right to arbitrate by substantially participating in the litigation). Plaintiff, on the other hand, waived her right to litigate this matter by acknowledging receipt of the 2025 U.S. Citi Handbook, which expressly states:

> I UNDERSTAND THAT BY ACKNOWLEDGING RECEIPT OF THE 2025 U.S. HANDBOOK AND THE EMPLOYMENT ARBITRATION POLICY, **I AM WAIVING ANY RIGHT I MAY HAVE UNDER THE LAW TO BRING EMPLOYMENT-RELATED DISPUTES, WHETHER INITIATED BY ME OR BY CITI, IN FEDERAL OR STATE COURT, OR TO HAVE ANY EMPLOYMENT-RELATED DISPUTE HEARD BY A JURY.** I UNDERSTAND THAT THIS WAIVER OF RIGHTS COVERS ALL TYPES OF EMPLOYMENT-RELATED DISPUTES AS DESCRIBED IN THE ARBITRATION POLICY. I UNDERSTAND THAT I WILL INSTEAD BE REQUIRED TO SUBMIT ALL SUCH EMPLOYMENT-RELATED DISPUTES FOR FINAL AND BINDING DECISION BY AN ARBITRATOR.

Wilson Decl., ¶6, Ex. B (emphasis added). Likewise, Plaintiff waived her right to litigation by making an arbitration demand to Citi as to the First Action on August 7, 2026, as both the lawsuits are subject to the same arbitration agreement that Plaintiff agreed to.

The Court should find that Citi and Plaintiff entered into a valid, enforceable arbitration agreement and that Plaintiff must arbitrate her claims in the Instant Lawsuit.

## IV. Plaintiff Should Be Ordered to Pay Citi's Expenses with Respect to this Motion.

This Court can and should exercise its inherent authority and impose sanctions on Plaintiff for relitigating an issue this Court squarely rejected less than three weeks ago and for filing another lawsuit against Citi despite making an arbitration demand in relation to the First Action. Federal courts possess the inherent power to sanction parties who conduct litigation in bad faith. *See Engel v. Experian Info. Sols.*, No. 04-61380-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 64352 (S.D. Fla. June 3, 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

This Court issued a comprehensive Order in the First Action finding that Plaintiff's claims are subject to a valid and enforceable arbitration agreement and that the EFAA does not preclude arbitration of those claims. *See* First Action, August 5, 2026 Order. The Court thoroughly analyzed Plaintiff's EFAA preclusion argument and found the EFAA was inapplicable because Plaintiff's allegations did not plausibly state a claim for sexual harassment. *Id*. The same day, Plaintiff filed the Instant Lawsuit raising the nearly identical EFAA preclusion argument solely to harass Citi with vexatious litigation.[8] Plaintiff's Instant Lawsuit is frivolous, vexatious, and undertaken in bad faith. Plaintiff also made an arbitration demand

[8] Plaintiff has since threatened to file a third lawsuit against Citi.

to Citi on August 7, 2026 in relation to the First Action which highlights the frivolousness of Plaintiff's instant lawsuit, as it reflects that Plaintiff is simultaneously pursuing arbitration while pursuing new lawsuits against Citi for claims expressly covered by the Parties' arbitration agreement. Despite proceeding *pro se*, the Court can take judicial notice that she is not an unsophisticated litigant unfamiliar with the EFAA's provisions, federal procedural rules, and her contractual obligations. Citi has been forced to expend significant time, effort, and resources preparing this Motion to address an argument that this Court already resolved. Moreover, Citi has been obligated to respond to yet another lawsuit which Plaintiff should understand belongs in arbitration. This is precisely the type of vexatious litigation tactic that sanctions are designed to deter. Citi respectfully requests that this Court order Plaintiff to pay Citi's reasonable expenses incurred in preparing this Motion in response to the Instant lawsuit that should never have been filed in the first place.

## **CONCLUSION**

For all reasons provided above, Defendants respectfully request an Order: (1) compelling Plaintiff to arbitrate her claims, (2) staying this action, and (3) any other relief this Court deems just and proper.

**LOCAL RULE 3.01(g) CERTIFICATE**

Counsel for Defendants conferred with Pro Se Plaintiff on August 24, 2026 and on April 26, 2026 via e-mail regarding the relief requested in this Motion. Plaintiff opposed the relief requested.

Dated: August 27, 2026. Respectfully submitted,

JACKSON LEWIS P.C.

By: */s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris
Florida Bar No. 0523283
stephanie.adler-paindiris@jacksonlewis.com
390 North Orange Avenue, Ste. 1285
Orlando, Florida 32801
Tele: (407) 246-8440

Melissa M. Castillo
Florida Bar No. 1025338
melissa.castillo@jacksonlewis.com
Wells Fargo Center
100 South Ashley Drive, Suite 2200
Tampa, FL 33602
Tele: (813) 512-3210

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of August 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, and a copy was electronically furnished via email to yglazman@protonmail.com and yglazman@gmail.com and sent via U.S. Mail to Yuliya Glazman, 2110 Thousand Trails Road, Clermont, FL 34714, *Pro Se Plaintiff.*

*/s/ Stephanie Adler-Paindiris*
Stephanie Adler-Paindiris