UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SEP 2 2026 PM4:12
FILED - USDC - FLMD - TPA

YULIYA GLAZMAN,

*Plaintiff,*

v. Case No. 8:26-cv-02265-TPB-SPF

CITIGROUP, INC., and
CITIBANK, N.A.,

*Defendants.*

# PLAINTIFF'S PROTECTIVE OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Plaintiff Yuliya Glazman opposes Defendants' Motion to Compel Arbitration and Stay Litigation, Doc. 14, and states as follows. Plaintiff files this opposition protectively because Plaintiff's pending Motion for Leave to File a Supplemental Complaint under Federal Rule of Civil Procedure 15(d) remains undecided. This opposition addresses Defendants' motion as directed to the presently operative Complaint and preserves Plaintiff's positions arising from any supplementation permitted by the Court.

## INTRODUCTION

Citi's motion rests on a premise the record does not support: that the August 5 Order decided this case. It did not. The August 5 Order compelled arbitration in the First Action and stayed it. No final judgment entered. The order is interlocutory and nonappealable, and it carries no preclusive force. Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 892–93 & n.14 (11th Cir. 2013). Nothing was decided that can be extended to this action.

Citi's own motion proves the point. Citi calls the EFAA question "settled." Doc. 14 at 3, 5, 24. It then argues that question across pages 12 through 18, cites Olivieri v. Stifel, Nicolaus & Co., 112 F.4th 74 (2d Cir. 2024), and states that retaliation arising from sexual harassment "may trigger the EFAA." Doc. 14 at 16. A settled question is cited. It is not argued across seven pages of briefing.

Section 402(b) assigns that question to this Court. 9 U.S.C. § 402(b). The question is whether this case relates to the sexual-harassment dispute Plaintiff asserted and prosecuted. The motion cannot answer it by importing an interlocutory order from a different case.

The underlying dispute is sexual harassment. This case is the retaliation for pursuing it. A retaliation case born of a sexual-harassment dispute relates to that dispute, and the EFAA governs any case that relates to it.

## ARGUMENT

### I. THE AUGUST 5 ORDER DID NOT DECIDE THE EFAA QUESTION PRESENTED BY THIS ACTION

#### A. The August 5 Order Has No Preclusive Effect

The August 5 Order compelled arbitration, stayed the First Action, and administratively closed it. First Action, Doc. 54. No final judgment has entered, and the First Action remains open on the docket and stayed pending arbitration.

A stay-and-compel order is interlocutory and nonappealable absent certification under 28 U.S.C. § 1292(b). 9 U.S.C. § 16(b); *see Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (describing the FAA's stay structure and § 16's limits on interlocutory review). Under *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892–93 & n.14 (11th Cir. 2013), a nonappealable interlocutory order lacks collateral-estoppel and res-judicata effect.

Citi may invoke the reasoning of the August 5 Order, but the Order cannot operate as preclusion in this separate action. Citi's repeated description of the EFAA question as "settled," Doc. 14 at 3, 5, 24, cannot supply the preclusive force the Order lacks.

#### B. This Action Presents a Different Statutory Question That § 402(b) Requires the Court to Decide

The First Action asked whether the allegations then pleaded plausibly stated the hostile-work-environment theory supporting the EFAA election in that action. First Action, Doc. 54 at 5–7. The Second Action asks whether later retaliation and adverse employment conduct, allegedly occurring after Plaintiff asserted and prosecuted that dispute and because she did so, creates a case that "relates to" that dispute under 9 U.S.C. §§ 401(4) and 402(a).

The pleaded sequence is compact and distinct. Plaintiff asserted the underlying sex-based hostile-work-environment dispute, filed the First Action, and pursued the related administrative proceedings. Compl. ¶¶ 10–18. Citi allegedly thereafter recruited and interviewed Plaintiff for an internal position, selected a male candidate, and subjected her later applications to additional non-selections and non-responses. Compl. ¶¶ 26–31, 37–47. This action seeks relief for that later conduct. Compl. ¶¶ 51–57.

Citi's motion confirms that the later case presents its own statutory question. Citi devotes pages 12–18 to whether the alleged retaliation sufficiently relates to the underlying dispute, cites *Olivieri*, and acknowledges that retaliation arising from underlying sexual harassment may trigger the EFAA. Doc. 14 at 12–18. Citi

disputes the characterization of the underlying dispute rather than the existence of the relationship issue.

The August 5 Order did not erase the dispute Plaintiff asserted, permanently reclassify that dispute for all later litigation, or determine whether the post-filing conduct pleaded here creates a case relating to that dispute. Whether Plaintiff ultimately prevails on the underlying hostile-work-environment claim is one question; whether this later case relates to the dispute she asserted is another.

Section 402(b) assigns that independent determination to the Court. Plaintiff elected under § 402(a) and pleaded the relationship between the later conduct and the underlying dispute. Compl. ¶¶ 5, 51–56.

## II. THIS CASE RELATES TO THE UNDERLYING SEXUAL-HARASSMENT DISPUTE WITHIN 9 U.S.C. §§ 401–402

### A. Sections 401(4) and 402(a) Encompass Retaliation Arising From the Underlying Dispute

Section 401(4) defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). At the election of the person

alleging such conduct, § 402(a) makes a predispute arbitration agreement unenforceable "with respect to a case" relating to that dispute.

Three features control. First, the statutory unit is the dispute, not a claim already reduced to a merits judgment. Second, "alleged" governs the character of the underlying conduct: at the gateway discussed below, the statute asks what is alleged to constitute sexual harassment under applicable law, not what has already been proven. Third, "relates to" supplies a connection standard. It ordinarily means to have bearing, concern, or association with another subject. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). The later case therefore need not be identical to the underlying dispute.

*Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74 (2d Cir. 2024), supplies the principal application. It recognizes that retaliation arising from the assertion of underlying sexual harassment may itself produce a case within the EFAA. The relationship is the causal link between the asserted dispute and the later response to its assertion; the later retaliation need not reproduce the underlying harassment. Citi cites *Olivieri* and states the rule: retaliation arising from underlying sexual harassment "may trigger the EFAA." Doc. 14 at 16.

The pleaded sequence fits that relationship. Plaintiff alleges an underlying sex-based hostile-work-environment dispute. Compl. ¶¶ 10–16. She asserted and prosecuted that dispute through the First Action and a related EEOC charge. *Id.* ¶¶ 17–18. Citi allegedly thereafter recruited and interviewed her for an internal position, selected a male candidate, and subjected her post-separation applications to additional non-selections and non-responses. *Id.* ¶¶ 26–31, 37–47. This action alleges that the later conduct occurred because Plaintiff asserted and prosecuted the underlying dispute. *Id.* ¶¶ 51–57. Plaintiff is the person alleging the underlying conduct and made the election in this case. *Id.* ¶ 5.

The connection is direct: underlying dispute; assertion and prosecution; alleged adverse employment response; resulting retaliation action. Section 402(a) asks whether the case relates to the dispute, and the complaint pleads that relationship at every link.

Citi therefore does not dispute that retaliation can relate to a qualifying dispute. It contends that Plaintiff's underlying dispute cannot qualify because the alleged working conditions were not sexual in content. Doc. 14 at 13–18. That contention collapses the relationship inquiry into a categorical conduct-type test. The contention instead must be evaluated under the law governing sex-based

hostile environments, because § 401(4) expressly incorporates applicable federal law.

### B. Binding Eleventh Circuit Law Recognizes Sex-Based Hostile Environments Without Sexually Explicit Conduct

Title VII hostile-work-environment law imposes no categorical requirement of sexual propositions, sexual desire, or sexually explicit conduct. Citi contrasts the alleged conditions here with propositions, comments, touching, and other sexualized conduct and treats their absence as dispositive. Doc. 14 at 13–18. But the "because of sex" inquiry asks whether members of one sex were exposed to disadvantageous terms or conditions of employment to which members of the other sex were not. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–81 (1998). Sexual content can be evidence of sex-based treatment; it is not the only form that such treatment may take.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 802–03, 811–13 (11th Cir. 2010) (en banc), requires workplace conditions to be assessed cumulatively and in their social context. Conduct need not be directed at the plaintiff individually to contribute to a hostile environment based on sex. The inquiry does not isolate each assignment or workplace event and ask whether that event was

itself sexual. It asks whether the conditions, viewed together and in context, were sufficiently severe or pervasive and were imposed because of sex.

Plaintiff's allegations require that cumulative evaluation. She was the sole woman on a five-person team and shared the same job-family classification and C-level designation as four male colleagues. Compl. ¶ 10. A newly hired male employee had a designated male backup. Yet across three documented engagements in 2025, Plaintiff alleges that Citi repeatedly assigned her—not the designated backup—to identify and correct errors in that male employee's work, reconcile data across systems, and issue written corrections to senior leaders. Compl. ¶ 13. She alleges that comparable recurring corrective assignments were not imposed on her male colleagues. *Id.*

The alleged assignments displaced Plaintiff's core responsibilities, carried no compensation adjustment, and created additional work pressure over roughly a year. *Id.* The theory is not that any one corrective assignment, standing alone, constituted harassment. It is that Citi repeatedly imposed a sex-differentiated pattern of remedial work on the team's sole woman while similarly classified men were not subjected to the same recurring burden.

Plaintiff alleged that those sex-differentiated working conditions, considered cumulatively and in context, constituted a hostile work environment because of sex under applicable federal law. That legal characterization defines the underlying dispute for § 401(4). Whether Plaintiff ultimately establishes causation, severity, or pervasiveness is a merits question; it does not justify replacing *Oncale* and *Reeves* at the gateway with a categorical requirement of sexually explicit conduct.

### C. The Appellate Authorities Confirm That the EFAA Gateway Is Unsettled and That Nonsexual Conduct May Qualify

The August 5 Order recognized competing approaches to the EFAA gateway: plausibility and nonfrivolousness. First Action, Doc. 54 n.3. The nonfrivolousness alternative derives from the rule that a federal claim supplies a judicial basis unless it is wholly insubstantial and frivolous. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024), applied that real-and-nonfrivolous standard to the EFAA gateway. Section 401(4)'s use of "alleged" supports separating gateway sufficiency from ultimate merits success. Plaintiff preserved both standards.

The Sixth Circuit identified the same split in *Bruce v. Adams & Reese, LLP*, 168 F.4th 367 (6th Cir. 2026). It did not resolve the statutory standard because the

alternative gateway argument had been forfeited there and the asserted dispute satisfied the higher standard in any event. Plaintiff forfeited neither approach here. The Ninth Circuit applied plausibility in *Ding v. Structure Therapeutics, Inc.*, No. 25-1532 (9th Cir. Aug. 19, 2026), only because the parties agreed to that framework; it expressly "assum[ed] without deciding" that the EFAA imposes that requirement. Neither decision establishes plausibility as the statutory rule.

*Ding* independently confirms the proposition important here. It held that a plaintiff stated a "sexual harassment dispute" under § 401(4) by alleging a sex-based hostile work environment under California's Fair Employment and Housing Act even though the alleged conduct was not sexual in nature. The court grounded that conclusion in § 401(4)'s incorporation of "applicable Federal, Tribal, or State law." Nonsexual content is therefore not disqualifying when the applicable harassment law recognizes the alleged conduct as sex-based harassment. That is the precise legal proposition Citi's categorical conduct argument denies.

Citi's characterization of the issue as "settled" cannot be reconciled with the August 5 Order's recognition of competing standards, the Sixth Circuit's discussion in *Bruce*, or the Ninth Circuit's treatment in *Ding*. Two courts of appeals have encountered the gateway question without holding that § 401(4) requires

plausibility as a matter of statutory interpretation. The Court need not resolve the split to deny this motion: under either standard, the correct statutory question must be assessed through *Oncale* and *Reeves*, not a categorical sexual-content requirement.

### D. A Valid § 402(a) Election Operates on the Case and Defeats Referability Under §§ 3 and 4

Section 402(a) makes the agreement unenforceable "with respect to a case" relating to the dispute. Congress wrote "case," not "claim." Once a qualifying dispute exists, the election applies at the case level. *Bruce*, 168 F.4th at 382 (the EFAA bars arbitration of the plaintiff's entire case); *accord Ding*, No. 25-1532 (a qualifying plaintiff may bring her entire case in court). Plaintiff therefore need not establish that every count is independently a sexual-harassment dispute. The statutory election operates across the case that relates to the qualifying dispute.

That rule answers Citi's request for compulsion and a stay. Section 2 makes arbitration agreements enforceable except on generally applicable contract grounds "or as otherwise provided in chapter 4." 9 U.S.C. § 2. The EFAA is Chapter 4 and is the express statutory exception incorporated into the FAA's enforceability rule. Section 3 permits a stay only when the issue is "referable to arbitration" under

a written agreement. 9 U.S.C. § 3. Section 4 permits compulsion only when an enforceable agreement covers the controversy. 9 U.S.C. § 4.

Section 402(a) operates "notwithstanding any other provision" of Title 9. If this case falls within § 402(a), the predispute arbitration agreement is unenforceable with respect to the case, and § 402(b) assigns that determination to the Court. Citi therefore cannot establish the referability required by §§ 3–4.

The requested stay has no independent basis. Referability produces the stay; the stay does not stand alone. *Smith*, 601 U.S. at 475–76. If § 402(a) applies, Citi has established neither a basis for compulsion under § 4 nor the predicate for a stay under § 3.

### E. Plaintiff's Compliance With the August 5 Order Did Not Waive the Separate Election Made in This Action

The chronology defeats Citi's waiver argument. On August 5, 2026, Plaintiff filed this action and made the § 402(a) election applicable here. Compl. ¶ 5. On August 7, two days later, she initiated arbitration of the First Action after the Court ordered her to arbitrate that separate case. Doc. 14 at 23.

The later initiation of arbitration followed a court directive concerning the First Action. It did not withdraw, waive, or relinquish the election already made in this action. An act taken to comply with an order compelling arbitration of one

set of claims does not surrender a statutory election already made in a separate action over different conduct. Compliance with an order governing one case is not voluntary relinquishment of a statutory election governing another.

*Ding*, No. 25-1532, confirms that participation in arbitration does not categorically extinguish EFAA rights absent intentional relinquishment of a known right. Plaintiff made her election here before taking the compelled step in the First Action. Her compliance with that Order supplies no basis to find waiver or referability in this case.

## III. CITI CHOSE ESCALATION. IT CANNOT BILL PLAINTIFF FOR THAT CHOICE.

Citi asks the Court to award it the cost of responding to Plaintiff's lawsuit. Doc. 14 at 24–25. The request should be read against the record of how each party has litigated. That record follows.

Across seven substantive filings in these two actions, Citi has directed at least seventy separate pejorative or motive-attributing characterizations at Plaintiff, her filings, or her litigation conduct.[1] Plaintiff's corresponding number is zero. At least seventy to zero.

---

[1] The figure is a floor, not an estimate. It counts only party-authored pejorative or motive-attributing characterizations directed at the opposing party, her filings, her arguments, or her litigation conduct,

The escalation was not gradual. Each step arrived in the filing where Citi's own conduct came under examination.

| Filing | The Occasion | Citi's Words |
|---|---|---|
| **Doc. 29** May 5, 2026 | Citi's own motion to compel arbitration. | "inventive and inaccurate"; "self-serving"; "conclusory." *No fee request.* |
| **Doc. 43** June 1, 2026 | Plaintiff's motion for leave to amend, which placed Citi's settlement communications on the record. Citi moved to strike them. | "frivolous" (four times); "gamesmanship"; "manipulate the English language"; "waste the Court's time and resources." *First fee request.* |
| **Doc. 64** Aug. 24, 2026 | Plaintiff's motion to correct typographical errors. Citi conceded the errors exist. | "entirely unnecessary." Nothing else. |
| **Doc. 62** Aug. 24, 2026 | Plaintiff's motion to correct the Order's statement that her bonuses "reflected poor performance ratings given to her by Defendants." | "erroneous interpretation"; "Plaintiff's own misinterpretation"; "misunderstands and mischaracterizes"; "misinterprets." |

across First Action Docs. 29, 43, 62, 63, 64, and 65 and Doc. 14 in this action. It excludes quotations from cited authorities, statements of legal standards, references to the "nonfrivolous" standard by name, and uses of "sanctions" as relief terminology. The identical criteria applied to Plaintiff's substantive filings in both actions, including the operative complaints, the arbitration opposition, and the pending motions, yield zero.

| Filing | The Occasion | Citi's Words |
|---|---|---|
| **Doc. 63** Aug. 24, 2026 | Plaintiff's Rule 54(b) motion comparing the Order's description of her opposition against the opposition itself. | "frivolous" (seven times); "mischaracterizes" (four times); "meritless" (twice); "absurd"; "overestimates her own authority"; "her facts are nonexistent"; "second bite at the apple." *Second fee request, under the Court's inherent powers.* |
| **Doc. 65** Aug. 24, 2026 | Plaintiff's motion to certify the EFAA gateway question under 28 U.S.C. § 1292(b). | "tortured and manipulated"; "lacks legal support." *Third fee request, under the Court's inherent powers.* |
| **Doc. 14** (Second Action) Aug. 27, 2026 | Plaintiff's complaint alleging that Citi recruited her, interviewed her, and selected a male candidate while her first lawsuit was pending. | "vexatious" (four times); "frivolous" (five times); "bad faith"; "sanctionable"; "solely to harass Citi." *Fourth fee request, with a dedicated sanctions section.* |

Plaintiff's filings contain none of this vocabulary. They cite statutes. They cite the docket. They quote the instruments and the orders at issue. They characterize no lawyer, no party, and no motive. Across two actions and every substantive filing, Plaintiff has confined herself to the record and the law.

August 24 states the pattern in miniature. Citi conceded the typographical errors and opposed correcting them anyway. That opposition contains none of the vocabulary above. Doc. 64. The opposition filed the same day, by the same

lawyers, to the motion comparing the Order's description of Plaintiff's opposition against the opposition itself carries more of it than any other filing in either action. Doc. 63. The variable is not how Plaintiff litigated. It is what each motion exposed.

One filing carries the point by itself. The Order states that Plaintiff's bonus amounts "reflected poor performance ratings given to her by Defendants." The operative pleading alleges no poor performance ratings; it alleges four consecutive ratings at the second-highest level. Plaintiff moved to correct the sentence because a public order describing poor performance ratings follows her into every search for employment in her industry. Citi opposed. It made two contentions. First, the sentence does not mean what its words say: on Citi's reading, "poor performance ratings given to her by Defendants" describes ratings that were never given, and the plain reading is "Plaintiff's own misinterpretation." Doc. 62 at 2–4. Second, the harm is Plaintiff's own doing: "it was Plaintiff's choice, not Citi's, to file this public lawsuit in lieu of confidential arbitration." *Id.* at 5. Plaintiff identified an inaccuracy and asked that the record be made accurate. Citi answered that the words do not say what they say, and that whatever the words cost her is the price of choosing a public forum. Twelve weeks earlier, Citi accused Plaintiff of attempting to "manipulate the English language." Doc. 43.

The request assumes its conclusion. Citi begins from the premise that the August 5 Order resolved the statutory question this action presents. Sections I and II explain why it did not. From the assumed premise, Citi derives the labels. From the labels, a bill. Labels are not findings.

The law requires the finding, and it requires a particular kind of finding. "The key to unlocking a court's inherent power is a finding of bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). The standard is subjective, and the power is exercised "with restraint and discretion." *Id.* Recklessness alone does not satisfy it; the standard is met only by subjective bad faith or by conduct so egregious that it could only have been undertaken in bad faith. *Id.* at 1224–25.

Citi cannot meet that standard, because Sections I and II establish that this action presents a nonfrivolous statutory dispute supported by appellate authority—*Olivieri*, *Bruce*, *Ding*, *Reeves*, and *Oncale*, among others. A party cannot convert its own contested reading of the merits into the opposing party's subjective bad faith. Citi identifies no fabrication, no concealment, and no violated order. It identifies a lawsuit it would prefer not to answer. And it offers Plaintiff's compliance with the August 5 Order—her August 7 arbitration demand—as

evidence of bad faith. Doc. 14 at 24–25. Compliance with a court order is not bad faith.

This is Citi's fourth fee demand across these two actions, and its third under the Court's inherent powers in twenty days. See First Action, Doc. 63 at 20; First Action, Doc. 65 at 11; Doc. 14 at 24–25. The inherent power is reserved and exercised with restraint precisely so that it does not become a routine adjunct to opposition briefing. *Purchasing Power*, 851 F.3d at 1223, 1225.

Plaintiff has litigated her claims. Citi has litigated Plaintiff's motives. The request should be denied.

## CONCLUSION

Two questions decide this motion, and § 402(b) assigns both to this Court.

The first is whether this case relates to the sexual-harassment dispute Plaintiff asserted. It does. This action is the retaliation for pursuing that dispute, and a retaliation case born of a sexual-harassment dispute relates to it. Section 402(a) then makes the arbitration agreement unenforceable as to this case. Sections 3 and 4 leave no basis to compel and none to stay — the stay is derivative, and without referability it falls.

The second is whether Citi has shown the subjective bad faith that inherent-power sanctions require. It has not. A contested statutory question supported by appellate authority is not bad faith, and Plaintiff's compliance with the August 5 Order is not bad faith.

Citi asks the Court to decide this case by reading an order entered in another one. The Court should decide this case.

Dated: August 31, 2026.

Respectfully submitted,

Yuliya Glazman
Plaintiff, *pro se*
2110 Thousand Trails Blvd
Clermont, FL 34714
(407) 794-6503
yglazman@protonmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 31, 2026 the foregoing was delivered to the Clerk of Court via US Mail for filing. The Court's CM/ECF system will provide notice of electronic filing to all counsel of record upon docketing.

Yuliya Glazman